IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENDALL THOMAS,<br><br>                    Plaintiff,<br><br>v.<br><br>OLSON ASSOCIATES P.C. dba OLSON SHANER; RANDOLPH CHIP SHANER, JR.; ROB KOLKMAN; CONSTABLE KOLKMAN LLC; N.A.R., INC.; and JOHN DOES 1–5,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND DENYING MOTION TO CERTIFY**<br><br>Case No. 2:23-cv-00899-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Before the court are two motions to dismiss (ECF Nos. 13 & 14) and a motion to certify an issue to the Utah Supreme Court (ECF No. 20). For the reasons stated below, the court grants in part and denies in part the Defendants' motions to dismiss and denies the motion to certify.

### BACKGROUND[1]

This action concerns alleged violations of the Federal Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. Plaintiff Kendall Thomas incurred a debt with Mountain America Credit Union (MACU) around September 1, 2020. (Am. Compl., ECF No. 10 at ¶ 18.) MACU then assigned the debt to N.A.R., Inc. (NAR), a debt collection agency, who then assigned the debt to Olson Associates P.C. dba Olson Shaner (Olson Shaner) and Randolph Chip Shaner (collectively, the Law Firm Defendants). (Id. ¶¶ 6, 19.) Olson Shaner filed suit against

---

[1] The court accepts the Complaint's well-pled allegations as true for the purposes of this order. See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 771 F.3d 697, 700 (10th Cir. 2014).

1

Mr. Thomas on October 19, 2020, and obtained a judgment against him for $11,123.53. (Id. ¶¶ 20, 22.) On May 6, 2023, Olson Shaner moved for and obtained a writ of execution from the state court for an outstanding amount due of $9,600.80.[2] (Id. ¶¶ 23, 25.)

Olson Shaner then sent a copy of the writ to Rob Kolkman and Constable Kolkman LLC (the Constable Defendants) and "instructed, authorized, and required the constables to use the Writ to collect the alleged debt." (Id. ¶¶ 13, 26.) Mr. Thomas alleges that Mr. Shaner made the decision to provide the writ to the Constable Defendants for Olson Shaner and that Mr. Shaner "personally supervised all of the constables' collection attempts." (Id. ¶ 27.)

On May 17, 2023, the Constable Defendants mailed Mr. Thomas a collection letter styled as a court filing that included the insignia of a sheriff-style law enforcement badge. (Id. ¶¶ 31–32.) The letter stated that Mr. Thomas owed a balance of $9,949.81—an amount that included $349.01 in sale fees for a sale that Mr. Thomas alleges never occurred. (Id. ¶¶ 34–35.) The letter did not provide Mr. Thomas with notice that the sender was a debt collector attempting to collect a debt. (Id. ¶ 38.) Instead, the letter threatened to add additional court costs if Mr. Thomas did not make contact about a payment plan within ten days. (Id. ¶¶ 36–37.)

The Constable Defendants sent Mr. Thomas a second collection letter on June 22, 2023, which was also styled as a court filing. (Id. ¶¶ 40–42.) This collection letter stated that sale fees may have been added to the debt even though no such fees had been incurred. (Id. ¶ 44.) The collection letter also included a Notice of Sale, which stated that a sale of Mr. Thomas's personal property would occur on July 14, 2023, to satisfy the outstanding debt. (Id. ¶¶ 45, 47.) Mr. Thomas maintains that this notice (which he alleges was issued at the direction of Olson Shaner)

---

[2] This amount included $150 for attorney's fees, which Mr. Thomas alleges was greater than the allowed statutory amount and also inaccurate, as half of that amount had already been added to the judgment in an earlier order. (Am. Compl. ¶ 24.)

was intentionally false and that the threatened sale never occurred. (Id. ¶¶ 46, 50, 52.) Mr. Thomas also argues that "none of [the Defendants] are appointed as constables in Salt Lake County." (Id. ¶ 56.)

In response to the Defendants' collection efforts, Mr. Thomas called Mr. Kolkman's office and spoke to someone named "Cory." (Id. ¶¶ 62–63.) Cory told Mr. Thomas that any offer made by Mr. Thomas to pay off the debt would have to include at least 85% of the balance before Cory would communicate that offer to NAR. (Id. ¶ 65.) Cory also stated that he was required to obtain permissions and further instruction from the other Defendants before he could accept a settlement offer or extend a counteroffer. (Id. ¶ 66.) Cory did offer to reduce the $349.01 in sale fees which Mr. Thomas believed were included in error. (Id. ¶ 67.) Cory attempted to negotiate a payment plan and determine whether Mr. Thomas could pay a large lump sum. (Id. ¶¶ 68–69.) Cory did not inform Mr. Thomas that the Defendants were collecting a debt and that any information provided by Mr. Thomas could be used against him for that purpose. (Id. ¶ 71.) Mr. Thomas made at least one payment to the Constable Defendants as a result of their collection efforts. (Id. ¶ 75.)

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations in a complaint must raise a plausible right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And while factual allegations asserted in a complaint are accepted as true for purposes of a motion to dismiss, conclusory allegations in a complaint are not entitled to such deference and are insufficient to state a claim. Id.

3

## ANALYSIS

### I. Motions to Dismiss

Mr. Thomas asserts three causes of action against the Defendants: 1) violations of the FDCPA; 2) fraud; and 3) violations of 42 U.S.C. § 1983.[3]

The Defendants move to dismiss for a variety of reasons. First, NAR and the Law Firm Defendants argue that Mr. Thomas has insufficiently alleged an agency or respondeat superior relationship. (Law Firm Defs.' Mot. Dismiss, ECF No. 13 at 11–16.) Mr. Shaner specifically argues that any agency claims against him should be dismissed. (Id. at 16.) For its part, NAR argues that Mr. Thomas pleads insufficient facts to link NAR to any alleged conduct of the Constable Defendants. (Id. at 17.) Second, NAR and the Law Firm Defendants maintain that Mr. Thomas's fraud claim fails because there was no detrimental reliance. (Id. at 6–7.) Finally, NAR and the Law Firm Defendants advance several reasons why Mr. Thomas's civil rights claim fails. (Id. at 7–11.)

The Constable Defendants do not make any separate arguments but merely join the motion filed by NAR and the Law Firm Defendants. (See Constable Defs.' Mot. Dismiss, ECF No. 14.) As a result, the FDCPA claim will remain pending against the Constable Defendants regardless of the court's decision on the other issues. The argument advanced by NAR and the Law Firm Defendants concerning Mr. Thomas's FDCPA claim focuses on the lack of an agency relationship and the lack of direct actions taken by those Defendants in violation of the FDCPA; their argument therefore does not apply to the Constable Defendants.

---

[3] Mr. Thomas originally asserted a fourth cause of action under the Utah Consumer Sales Practices Act. (See Compl., ECF No. 2 at ¶¶ 133–46.) In response to the Defendants' first set of motions to dismiss and motion to certify (ECF Nos. 4–6), Mr. Thomas filed an Amended Complaint that removed this cause of action. (See Am. Compl.) The Defendants then filed renewed motions to dismiss and a motion to certify. (ECF Nos. 13–14, 20.)

The court notes that there are several pending lawsuits in this court involving similar parties and alleging similar fact patterns. See, e.g., Peretto v. Erickson, 1:23-cv-25-DBB, 2024 WL 555140 (D. Utah July 12, 2024); Young v. Erickson, 2:23-cv-420-TS, 2024 WL 81303 (D. Utah Jan. 8, 2024); Cordero v. Olson Associates P.C., 740 F. Supp. 3d 1117 (D. Utah 2024); Campbell v. Olson Associates P.C., No. 2:23-cv-914-DBB, 2024 WL 3510313 (D. Utah July 23, 2024). The court has carefully considered the rulings issued in these cases that address similar legal questions.

### A. Agency Relationship and the FDCPA

NAR and the Law Firm Defendants argue that Mr. Thomas failed to adequately allege an agency relationship between these Defendants and the Constable Defendants. As a result, NAR and the Law Firm Defendants argue that the FDCPA claim against them should be dismissed.

The court disagrees, finding that Mr. Thomas has adequately pled facts to hold NAR and the Law Firm Defendants liable under the theory of respondeat superior, which permits "employers [to be] held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment." Drew v. Pac. Life Ins. Co., 496 P.3d 201 (Utah 2021) (quoting Clover v. Snowbird Ski Resort, 808 P.2d 1037, 1040 (Utah 1991)).

First, Mr. Thomas has adequately alleged that the Constable Defendants were the "employees" of NAR and the Law Firm Defendants. The Amended Complaint alleges that NAR and the Law Firm Defendants "regularly collect debt and participated and played an active role in formulating, directing, and controlling the debt collection practices of the other Defendants." (Am. Compl. ¶ 15.) More specifically, Mr. Thomas maintains that NAR assigned the debt to the Law Firm Defendants to collect (id. ¶ 19), that the Law Firm Defendants provided the Constable

Defendants with a copy of the writ of execution and "instructed, authorized, and required the constables to use the Writ to collect the alleged debt" (id. ¶ 26), that Mr. Shaner "personally supervised all of the constables' collection attempts" (id. ¶ 27), and that the Law Firm Defendants "reviewed and approved each of the collection letters and notices" the constables sent to Mr. Thomas (id. ¶ 30). Mr. Thomas also alleges that, when he called Mr. Kolkman's office, someone named Cory told him that "he must make an offer of at least 85% of the balance of the alleged debt before [Cory] would communicate an offer to NAR." (Id. ¶ 65.) The Amended Complaint therefore contains several allegations that NAR, Olson Shaner, and Mr. Shaner all controlled and directed certain actions performed by the Constable Defendants.

For the same reasons, the court also finds that Mr. Thomas adequately alleges the Constable Defendants were acting within the scope of their employment for NAR and the Law Firm Defendants when the Constable Defendants sent the Notice of Sale to Mr. Thomas and engaged in other collection efforts. NAR and the Law Firm Defendants do not meaningfully dispute this finding apart from their objections to the existence of an agency relationship.

Other cases from this district court have reached consistent results. In actions where the complaints contained less information, the district court has ruled that the allegations were insufficient to establish an agency relationship. See Peretto, 2024 WL 555140, at *8 (finding that the complaint "d[id] not allege facts to suggest that [the debt collector] had the right to control the manner in which Constable Defendants sought to collect the debt."); Young, 2024 WL 81303, at *3, 5 (finding that the complaint contained only "vague allegations" regarding agency and that the "allegations of an agency relationship between the constables and [the debt collectors] are conclusory").

But more recent cases involving complaints similar to Mr. Thomas's amended complaint have found the existence of an agency relationship. In Campbell, the Honorable David Barlow found that similar allegations directed at the same group of Law Firm Defendants and Constable Defendants were sufficient to support an employment-style agency relationship between Olson Shaner and the Constable Defendants. 2024 WL 3510313, at *8. Judge Barlow further held that NAR could be held liable even if it did not directly hire the Constable Defendants, because "[g]eneral principles of agency law permit a principal to be held liable for the torts of an agent's subagent." Id. at *9. Judge Barlow found, however, that Mr. Shaner could not be held liable as the principal directing the Constable Defendants because Mr. Shaner was himself an agent of Olson Shaner:

> [The plaintiff] points to no theory under which one agent acting on behalf of a principal in supervising another agent can be held vicariously liable for the acts of the second agent. Nor does she point to any theory or authority that would establish direct liability for Mr. Shaner himself, rather than the law firm he served.

Id.

In Cordero, a case that also involves the same group of defendants, the Honorable Jill Parrish similarly determined that the complaint was sufficient to establish a theory of respondeat superior against NAR and all the Law Firm Defendants. 740 F. Supp. 3d at 1130. Judge Parrish held that the plaintiff had adequately stated this theory even against Mr. Shaner, noting that the plaintiff "may not yet know which of the NAR [and Law Firm] Defendants allegedly directed the Constable Defendants' actions …." Id. at 1132.

Finding Campbell and Cordero persuasive, the court agrees that the facts alleged by Mr. Thomas are sufficient to state a claim for respondeat superior or an employment-type agency relationship. Although Campbell and Cordero reach contrary conclusions about whether Mr.

Shaner may be vicariously liable for the actions of the Constable Defendants, the court agrees with Judge Barlow and finds that he may not. Even if Mr. Shaner directed the actions of the Constable Defendants, he did so as an agent of Olson Shaner. It is therefore the law firm, and not the individual employee, who acted as the employer or principal of the Constable Defendants under these facts. Accordingly, the court dismisses the FDCPA claim against Mr. Shaner.

The court notes that NAR and the Law Firm Defendants insist that the Constable Defendants are agents of the State of Utah and therefore cannot be the agents of anyone else. The court agrees that constables are agents of the state. According to a recent statute that went into effect while this litigation was pending,

> (3) A constable shall serve exclusively as an agent for:
>     (a) the state, city, or county that has a contract with the constable; or
>     (b) the court authorizing or directing the constable.
> (4) Except as otherwise provided in this part, a constable may not serve as an agent, or be deemed to be serving as an agent, for a person that is not described in Subsection (3).

Utah Code Ann. § 17-25-1 (effective July 1, 2024).

But despite the language stating that "a constable may not … be deemed to be serving as an agent" for anyone else, a constable acting outside his statutory duties is no longer shielded from liability: "An officer of the state is immune from liability under the FDCPA only while collecting a debt in the performance of his or her official duties." Sexton v. Poulsen & Skousen P.C., 372 F. Supp. 3d 1307, 1316 (D. Utah 2019). The Amended Complaint contains multiple allegations that the Constable Defendants were not, in fact, duly appointed constables and were not acting according to their official duties. See Campbell, 2024 WL 351013, at *8. The court is therefore not persuaded by the Defendants' argument that a Utah statute (which was not in effect during the events at issue here) bars the court from considering whether the Constable Defendants acted outside the scope of their official duties.

8

For these reasons, Mr. Thomas has adequately alleged that the Constable Defendants were acting as the agents of NAR and Olson Shaner in an employment-style agency relationship when attempting to collect the debt.  NAR and Olson Shaner may therefore be held liable for violations of the FDCPA committed by the Constable Defendants under the theory of respondeat superior.  But the court dismisses the FDCPA claim against Mr. Shaner.

**B.  Fraud**

To plead a fraud claim, a plaintiff must allege each of nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon in (8) and was thereby induced to act (9) to that party's injury and damage.

Webster v. JP Morgan Chase Bank, NA, 290 P.3d 930, 936 (Utah App. Ct. 2012).  NAR and the Law Firm Defendants seek to dismiss Mr. Thomas's fraud claim on the basis that he failed to adequately plead the damages and detrimental reliance elements of his claim.

Mr. Thomas alleges that because he believed the Constable Defendants' threats to sell his property to collect on the judgment against him, he "made at least one payment he was not required to pay …." (Am. Compl. ¶ 209.)  He also argues that he has been forced to hire an attorney to defend him in this matter.  (Pl.'s Opp'n Mem., ECF No. 16 at 6.)

The court need not decide whether hiring an attorney, without more, is sufficient to demonstrate detrimental reliance.  Compare Cordero, 740 F. Supp. 3d at 1136–37 (finding that incurring attorney's fees in reliance on the statements made by the Constable Defendants is sufficient to state a claim for fraud), with Campbell, 2024 WL 3510313, at *6 (finding that hiring an attorney was insufficient to demonstrate reliance because this action demonstrated that the

plaintiff did not believe the statements made by the Constable Defendants). Here, Mr. Thomas alleges that he made at least one payment in response to the Constable Defendants' actions. Taking Mr. Thomas's allegations as true, the court therefore finds that Mr. Thomas has adequately alleged detrimental reliance and damages at this stage of the litigation.

### C. Civil Rights Claim

Mr. Thomas asserts a cause of action under 42 U.S.C. § 1983, which provides a remedy for the "deprivation of a federally protected right" by actors "acting under color of state law." VDARE Found. v. City of Colorado Springs, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016)). NAR and the Law Firm Defendants argue that Mr. Thomas failed to allege a violation of his rights that would support a § 1983 claim.

The court agrees. Mr. Thomas has alleged no violations of his First, Fourth, and Fourteenth Amendment rights because his property was not seized, and because he has not cited any impediments to his participation in the underlying state action involving the writ of execution. See Cordero, 740 F. Supp. 3d at 1132 (finding no Fourth Amendment violation where no seizure or sale of property actually occurred and no First Amendment violation where the plaintiff could participate in the state court process). And although Mr. Thomas claims that NAR and the Law Firm Defendants unlawfully deprived him of rights guaranteed by the FDCPA, this claim is redundant to his FDCPA claim. "The FDCPA is a detailed enforcement statute granting plaintiffs a private right of action. Section 1983's general remedial statute is therefore preempted by the FDCPA for the purposes of this lawsuit." Id.

The court therefore dismisses Mr. Thomas's § 1983 claim.

## II. Motion to Certify

Should the court deny the Defendants' motions to dismiss, NAR and the Law Firm alternatively move the court to certify the following issue to the Utah Supreme Court:

> Whether a constable, who has been tasked with serving a writ of execution which commands him "to collect the judgment, with costs, interest, and fees, and to sell enough of Defendant(s) non-exempt personal property including but not limited to: cash, TVs, stereos, electronic equipment, VCRs, office equipment, cameras, works of art, collections, guns, camping equipment, furniture, livestock, machinery, farm equipment, tolls and any and all vehicles to satisfy the same" is permitted, under Utah law, to enter into payment plans and accept payments from judgment debtors.

(Mot. Certify, ECF No. 20 at 2.)

The court agrees with Judge Barlow that "there is not sufficient uncertainty about the question to justify certification to the Utah Supreme Court." Campbell, 2024 WL 3510313, at *3. This action involves "straightforward matters of statutory interpretation, as well as interpretation of another court's orders." Id. at *4; see also Cordero, 740 F. Supp. 3d at 1137 (denying motion to certify for similar reasons).

The court therefore denies the motion to certify.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The Motions to Dismiss (ECF Nos. 13 & 14) are GRANTED IN PART and DENIED IN PART. The court dismisses Mr. Thomas's § 1983 claim and dismisses his FDCPA claim against Mr. Shaner.

2. The Motion to Certify (ECF No. 20) is DENIED.

DATED this 31st day of March, 2025.

BY THE COURT:

_____
Tena Campbell
United States District Judge